**ALL-STAR INSURANCE CORP.**

**v.**

**The STEEL BAR, INC., Chris Salaris, Michael Morris and Darlene Morris.**

**Civ. No. 70 H 218.**

United States District Court,
N. D. Indiana,
Hammond Division.

Feb. 22, 1971.

---

Peter C. Bomberger, Hammond, Ind., for plaintiff.

Rudolph Tanasijevich, Hammond, Ind., for Chris Salaris & The Steel Bar.

Lester Murphy, East Chicago, Ind., for Michael & Darlene Morris.

### MEMORANDUM

BEAMER, District Judge.

This is a declaratory judgment action brought by All-Star Insurance Corporation for a determination of the rights of the parties under a liability insurance policy issued to The Steel Bar, Inc. The policy provides in part as follows:

> "The Company will pay on behalf of the insured all sums which the insured shall become legally obliged to pay as damages because of * * * bodily injury * * * to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance, or use of the insured premises and all operations necessary or incidental thereto, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury * * * even if any of the allegations of the suit are groundless, false, or fraudulent. * * * "

The policy defines an occurrence as "an accident * * * which results * * * in bodily injuries * * * neither expected nor intended from the standpoint of the insured." ·

The insured, The Steel Bar, Inc., is owned and operated by Chris Salaris. On about January 24, 1970, Michael Morris, Darlene Morris, and Tony Parella were customers in the bar. These customers did not want to leave because they had been unable to start their car. Since it was past the legal closing time, Salaris was anxious to get the customers out of the bar. Salaris put the days' receipts in a bag, took out his gun, turned off the lights in the bar, and started to leave while telling the customers he was closing. While Salaris was trying to persuade the customers to leave, a bullet discharged from his gun. The bullet

apparently struck Parella first and then ricocheted into Michael Morris.

Morris brought suit in the Lake Superior Court against The Steel Bar, Inc. and Chris Salaris. In Paragraph I of that suit, Morris contends that he was injured by a bullet which was negligently discharged by Salaris during the course of an argument between Salaris and Parella. In Paragraph III, Morris alleges that Salaris purposely aimed the pistol at Parella and so discharged it as to strike both Parella and Morris with the bullet. Paragraph II of the complaint, which alleged malicious and wanton conduct by Salaris, has been dismissed on the motion of Morris.

All-Star Insurance Corporation brought an action in this Court seeking a declaration it had no duty to defend or liability as to the tort action of Morris. The motion for summary judgment filed by Chris Salaris and The Steel Bar, Inc. seeks a determination that the insurer has a duty to defend and to pay any judgment rendered against the insured in the tort action.

The issues to be decided in this lawsuit require that the Court determine the coverage of the liability insurance policy issued to The Steel Bar, Inc. However, it is first necessary to understand that the word "coverage" has several meanings. It is necessary to appreciate these differences in meaning in order to see how the rights of the parties are determined.

Whether an insurance policy "covers" a particular incident depends initially upon whether the contract is in force (e. g., whether premiums have been paid), whether the conditions precedent have been met (e. g., whether the insured notified the insurer of the accident), and whether the incident falls within a specific exclusion in the policy (e. g., where the driver of an automobile was not legally authorized to drive a car). If there is no "coverage" in the sense used here, the Court never reaches the problem of determining the duty to defend or duty to pay under the contract since

the contract does not even apply in such a situation.

In Mitzner v. Fidelity & Casualty Co., 94 Ind.App. 362, 154 N.E. 881 (1927), the Court determined that the insurance policy did not "cover" an accident in the sense that we have been talking about. The Court stated, at 882:

> "There is no doubt or ambiguity about the above clause; it is not open to construction; it is a part of 'coverage' of said policy, and, as the said automobile was, at the time of said accident being driven by a person under the age of 16 years, said policy did not cover such operation of said automobile; it was without the coverage of said policy; and there was no duty upon the insurance company to defend said damage suit, nor is there any liability for the expenses thereof."

Clearly here, the Court was not attempting to set forth a rule for determining duty to defend. The Court simply found that there was no "coverage"; i. e., the contract did not apply.

If it is determined that the contract does apply, the Court must then look to "coverage" in a different sense to determine the duties of the insurer under the policy. There are two types of "coverage" which are involved here. There is the question of whether the risk insured against encompasses the facts of the accident *as alleged*. There is also the question whether *in fact* the occurrence was of the type insured against. In this latter sense, "coverage" is synonymous with liability to pay.

The insurance policy involved in this case provides that:

> "The Company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury * * * even if any of the allegations of the suit are groundless, false, or fraudulent. * * * "

The language of this provision clearly makes the duty of the insurer to defend rest upon the allegations in the injured

party's complaint. If the allegations in the complaint in the tort action are within the risk insured against, the insurance company has a duty to defend. *See* Couch on Insurance 2d § 51:40. Where the injured person makes allegations which may or may not be within the coverage of the policy, the insurer still must defend as long as there is a potential basis for recovery. *See* Couch on Insurance 2d § 51:45; Annot. 50 A. L.R.2d 458 at 504. Also, where the allegations are partly within and partly outside the coverage of the policy, the general rule is that the insurer has to defend those allegations which are within the risk insured against. *See* Couch on Insurance 2d § 51:43; Annot. 50 A.L.R. 2d 458, 506.

█ The nature of the insurer's duty to defend is purely contractual. There is no common law duty as to which the courts are free to devise rules. The obligation on the court is merely to interpret the language of the insurance contract. The clear language in the All-Star Insurance policy requires All-Star to provide a defense to any action alleging injury within the coverage of the policy. This duty on the insurer does not depend upon the ultimate facts of the occurrence, but rather is controlled by the allegations of the injured party, even if such allegations are "groundless". Consistent with the language in this type of insurance provision, a multitude of courts have held that the insurer's duty to defend does not depend upon the ultimate liability of the insurer to pay. *See* Couch on Insurance 2d § 51:48; Annot. 50 A.L.R.2d 458 at 475. If the parties had so intended, the insurance policy could have been drafted so as to predicate the duty of the insurer to defend upon a determination that the facts of the case actually were within the coverage of the policy. Since the policy makes the duty to defend rest upon the allegations of the injured party, the Court has no authority to look beyond the allegations to the actual facts.

This Court is aware of the decision of the Indiana Appellate Court in United States Fidelity & Guaranty Co. v. Baugh, 257 N.E.2d 699 (1970), in which the Court appears to state a "new Indiana rule" that the duty of an insurance company to defend depends both upon the allegations in the tort complaint and upon the facts as determined by an "investigation". There are several reasons why this Court is not inclined to apply such a "rule" in this case. First, duty to defend was *not* an issue before the Appellate Court. The insured in that case had paid his own expenses in defending the tort action. The insured sued his insurance company to recover his cost of defending and also the judgment which he had had to pay to the injured party. The jury awarded the insured the amount of the judgment against him, but did not award the insured his expenses in defending the action. The insurer appealed, but the insured did not cross-appeal for the failure of the jury to award him the cost of defense. Therefore, the only question before the Appellate Court was the liability of the insurance company to pay the judgment; the question of cost of defense was not an issue on the appeal. Furthermore, the use of language by the Appellate Court in its lengthy opinion is so confusing that it is not possible to tell what the Court intended by its opinion. Although the Court probably meant to state a new Indiana rule on duty to defend, the Court variously described the rule as one for determining "coverage" (page 710), "liability" (page 710), and "liability and duty to defend" (page 713). Finally, as this Court has already stated, the duty of the insurance company to defend is determined by the written contract and is not subject to court-created rules on common law duty.

Having established the analytical framework which will be used to determine the rights and obligations under an insurance policy, we can look now to the particular points in dispute in this case to determine if a summary judgment is

appropriate. In its complaint and brief, All-Star has raised three grounds upon which it bases its contention that it does not have a duty to defend the insured and does not have liability to pay for the injuries to Morris. All-Star alleges first that the insured failed to cooperate, as required by the insurance contract; second, that the injury did not arise out of the ownership, maintenance, or use of the insured premises; and third, that the injury was not unexpected and unintended from the standpoint of the insured.

■ The allegation that the insured failed to cooperate goes directly to the question of whether the insurance contract applied at all to the occurrence. All-Star has never specified how it contends the insured failed to cooperate. In fact, since its mention in the original complaint, the allegation of non-cooperation has not been reiterated by the insurance company. Chris Salaris has submitted an affidavit in which he states that he and The Steel Bar, Inc. have complied with all provisions of the insurance policy and cooperated fully in every respect. This affidavit has not been refuted by the insurer. The Court now finds that the insured did cooperate with the insurance company and that the coverage of the policy was not excluded by virtue of any non-cooperation.

■ The Court is also of the opinion that there is no genuine issue as to whether the injury arose out of the use of the insured premises. The depositions and affidavit show that the shooting of Morris occurred on the bar premises while Salaris was attempting to close the bar for the night. In its complaint for a declaratory judgment, All-Star states that Chris Salaris is an executive officer, director, and stockholder of The Steel Bar, Inc. and was acting within the scope of his duties àt the time of the shooting. On the basis of these facts, the Court finds that there is no genuine issue on this question; the injury to Morris did arise out of the use of the insured premises.

■ The third basis upon which the insurer contends that there is no "coverage" is that the injury to Morris was not unintended or unexpected on the part of the insured. This issue, obviously, does not involve the question of whether the insurance contract was in effect or whether the insured failed to comply with some condition precedent. Whether Salaris intended or expected Morris to be injured is a question of fact which will have to be decided in order to determine "coverage" in the sense of liability to pay. It does not bear upon the duty of the insurance company to defend the insured in the tort action.

On the basis of these findings, the Court is of the opinion that there is nothing which would preclude the insurance contract from being applied. There is no need at this point to determine the facts which would establish the ultimate liability to pay, since the duty to defend is determined by the allegations of the injured party in the tort action.

■ The complaint of Morris alleges that he was injured in an incident in The Steel Bar. The allegations in both Counts I and III appear to be within the "coverage" of the liability policy. At least it cannot be said at this time that the allegations are outside the policy. Under the terms of the insurance policy, the insurer has a duty to defend, and summary judgment for the insured on this point is appropriate.

■ The question of the insurer's ultimate liability to pay cannot be determined on this motion for summary judgment. The sole issue in dispute here appears to be whether the injury to Morris was intended or expected. Although this Court has a duty to decide this question, the Court does not feel that it is necessary to determine it before the state-court trial. The issue to be decided here is quite closely related to the issues to be determined in the tort suit. A verdict for the defendant in the state court would dispense with the question of liability to pay for Morris' injuries.

A verdict for the plaintiff in the tort suit, under the issues as they are now framed, would leave only a hypothetical argument that the injury was not "covered" and that the insurer was not ultimately liable to pay. Neither Morris nor Salaris contend that Salaris intended to shoot Morris. If the jury in the tort action finds that Morris was wounded by a bullet which ricocheted off a person at whom the gun was pointed, or if the jury finds that Salaris negligently, but unintentionally, shot Morris, it would seem highly unlikely under those circumstances that Salaris could be found to have intended or expected Morris' injury. Certainly, it is difficult to see how the All-Star Insurance Corporation could prove that the injury was expected and intended. Nevertheless, if the insurance company insisted on having a trial on this issue, this Court would, of course, oblige. However, the Court does not feel obliged to have a trial on the question of liability to pay prior to the tort trial in the state court.

■ Finally, the insurance company, has raised the issue of a conflict of interest. The contention of the insurance company that Salaris intentionally inflicted the injuries on Morris is clearly contradictory to the contentions of Salaris that the shooting was a mere accident. As the insurance company points out, it would be improper to expect or require it to defend the insured in such a situation. However, this conflict does not relieve the insurance company of the responsibility for providing for the defense of the insured. The contractual duty which the insurance company has assumed cannot be removed by the insurer's simply creating its own conflict of interest. There is no reason to handle this situation any differently than the usual situation where the insurer has a conflict of interest. The insurer must either provide an independent attorney to represent the insured, or pay for the cost of defense incurred by the insured hiring an attorney of his choice. *See* Employers' Fire Ins. Co. v. Beals, 240 A.2d 397 (R.I.1968).