Gary GRANT, Charles Dennis, Michael Jenkins, Danny Jackson, James Crawford, and John O'Leary, Individually and as Police Officers of the Police Department of the City of Fort Wayne, and City of Fort Wayne, a Municipal Corporation of the State of Indiana, Plaintiffs,

v.

NORTH RIVER INSURANCE COMPANY, American Home Assurance Company and Maryland Casualty Company, Defendants.

Civ. No. F 76–86.

United States District Court,
N. D. Indiana,
Fort Wayne Division.

July 27, 1978.

Leonard E. Eilbacher, Fort Wayne, Ind., for plaintiffs.

Lindy G. Moss, Fort Wayne, Ind., David O. Tittle, Martha Schmidt Hollingsworth, Indianapolis, Ind., for North River Ins. Co.

William F. McNagny, Fort Wayne, Ind., for American Home Assur. Co.

George E. Fruechtenicht, Richard E. Fox, Fort Wayne, Ind., for Maryland Cas. Co.

## MEMORANDUM OF DECISION AND DECLARATORY JUDGMENT

ESCHBACH, Chief Judge.

This declaratory judgment action is brought by the plaintiffs, the City of Fort Wayne, Indiana, and several of its individual police officers, to obtain a judicial determination of their rights under certain liability insurance policies provided by defendants, North River Insurance Company, American Home Assurance Company, and Maryland Casualty Company. Jurisdiction over the action exists by virtue of the parties' diverse citizenship and the amount in controversy. 28 U.S.C. § 1332. The action was tried to the court, without the intervention of a jury, on June 29, 1978. Based upon the policies at issue and the evidence presented at the trial of this cause, the court will, for the reasons hereinafter stated, enter a declaratory judgment order setting forth the rights and obligations of the parties in this action under the insurance policies now at issue. The following constitutes the court's findings of fact and conclusions of law pursuant to Rule 52, Federal Rules of Civil Procedure.

On June 14, 1975, the defendant North River issued a general liability insurance policy to the named insured "City of Fort Wayne, Indiana, including all Departments, Councils, Boards, and/or Commissions, excluding Board of Aviation and Public Transportation Corporation." By this policy, North River agreed to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence . . . ."

On April 1, 1975, the defendant American Home issued a police professional liability insurance policy to the named insured "Fort Wayne Police Department." By this policy, including the amendatory endorsement thereto, American Home agreed to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of, but not limited to, negligent acts, errors, or omissions of the paid employees of the law enforcement agency named in the declarations as follows: personal injury, bodily injury, [and] property damage to which this policy applies . . . ."

On March 1, 1975, the defendant Maryland Casualty issued an excess, or umbrella, liability insurance policy to the named insured "City of Fort Wayne." By this poli-

cy, Maryland Casualty agreed to "indemnify the Insured for ultimate net loss in excess of the retained limit which the Insured by reason of liability imposed upon the Insured by law or assumed by the Insured under any contract or agreement, shall become legally obligated to pay as damages because of personal injury liability or property damage liability . . . to which this policy applies, caused by an occurrence."

On March 4, 1976, during the coverage period of each of the aforementioned insurance policies, the individual plaintiff police officers were involved in an incident which led to the filing of several civil damage actions against them and the plaintiff city. See Woodward v. Grant, No. F 76–74 (N.D. Ind., filed July 29, 1976); Higginbotham v. Grant, No. S–77–544 (Allen Sup.Ct., Fort Wayne, Indiana, filed March 23, 1977); Mason v. Grant, No. S–78–478 (Allen Sup.Ct., Fort Wayne, Indiana filed March 3, 1978). While these actions are not directly involved in the instant cause, they do serve to focus the "coverage" questions which are now at issue. Thus, the court will provide a brief review of the factual and legal allegations supporting the three civil damage actions.

On the morning of March 4, 1976, Ronald A. Woodward and David L. Mason were passengers in an automobile driven by Joseph S. Higginbotham. They were proceeding south on Broadway Avenue on the west side of Fort Wayne, Indiana. Unknown to them, a bank robbery had just occurred in a different section of the city. Police officers Grant, Dennis, Jenkins, and Jackson, aware that a bank robbery had occurred, pursued the Higginbotham automobile, apparently believing it contained the bank robbers. The officers stopped the Higginbotham vehicle by positioning one of their automobiles in front and one to the rear of the Higginbotham vehicle. The officers exited their vehicles and approached the suspects' vehicle. It is not clear what next transpired, but shots were fired by the police officers

who had by now been joined by Officers Crawford and O'Leary. The result of the incident was that Joseph Higginbotham was killed; David L. Mason and Ronald A. Woodward were both seriously wounded and allegedly were permanently disabled.

In the federal court action, Woodward v. Grant, supra, Ronald A. Woodward and David L. Mason seek damages for the injuries they suffered. They have sued the individual police officers under 42 U.S.C. § 1983 for violation of civil rights protected by the fourth and fourteenth amendments, i. e., the right to be free from unreasonable searches and seizures and the right not to be deprived of life or liberty without due process of law. They also sue the police officers on state law tort theories of negligence and intentional harm. The Woodward plaintiffs sue the city under 42 U.S.C. § 1983 on a direct liability theory for having established an official policy or custom which caused or contributed to their injuries. They also sue the city under state law on a vicarious liability theory of respondeat superior, i. e., the Woodward plaintiffs contend the city is liable under state law for both the intentional and negligent tortious acts committed by the police officers, as those acts are prohibited by state law, while acting within the scope of their official duties. The plaintiffs in Woodward seek compensatory and punitive damages from all defendants in that action.

In the state court action Higginbotham v. Grant, supra, Joseph S. Higginbotham's parents sue as representatives of their son's estate and on their own behalf for the loss of their son's services, society, and comfort. They allege claims similar to those in the Woodward v. Grant suit. In the state court action Mason v. Grant, supra, David L. Mason's mother sues on her own behalf for the loss of her son's services, society, and comfort.

Essentially, the plaintiffs herein contend, and seek a judicial determination to the effect that the liability insurance policies issued by the defendants herein provide full

coverage, to the extent of the policy limits, to each of them as to any damages which might be recovered as a result of the 1976 incident. Each of the defendants, to a varying degree, denies that full coverage is afforded to these plaintiffs. The issues, then, concern the extent of coverage provided and the persons to whom that coverage extends under each of the policies. In determining these issues, the court will first consider those issues unique to each individual policy and then will consider the two issues common to all three policies, *viz.,* the availability of insurance coverage for punitive damages and the city's "contractually" assumed liability regarding its employees. Since all of the contracts at issue were negotiated, executed and performed in the State of Indiana, the substantive law of Indiana controls. *E. g., Norfolk & Western Ry. Co. v. Hartford Accident & Indemnity Co.,* 420 F.Supp. 92 (N.D.Ind.1976).

## I. THE NORTH RIVER INSURANCE POLICY

As previously indicated, the defendant North River provided a general liability insurance policy to the named insured "City of Fort Wayne, Indiana, including all Departments, Councils, Boards and/or Commissions, excluding Board of Aviation and Public Transportation Corporation." By this policy, North River agreed to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence . . ." The company also agreed to defend the insured in any suit for which coverage is provided. As this policy relates to the March 4, 1976, incident, North River contends (1) that it provides no coverage to the individual police officers, *i. e.,* that they are not "insureds"; (2) that it provides no coverage for damages based upon a violation of civil rights, *i. e.,* coverage is provided only for bodily injury and property damage; and (3) that it provides no coverage for damages

arising from non-"occurrences", *i. e.,* intentional and non-accidental damages are not covered.

## I A. INDIVIDUAL COVERAGE

■ North River contends that the individual police officers are not named insureds and, therefore, have no coverage whatsoever under its policy. The court agrees.

In addition to the "named insured" endorsement previously quoted, the North River policy has three other applicable provisions concerning who is covered. Two of these three provisions are contained in the policy's definitions. They are:

(1) " 'insured' means any person or organization qualifying as an insured in the 'Persons Insured' provision of the applicable insurance coverage."

(2) " 'named insured' means the person or organization named in [the named insured endorsement to this policy]."

The third provision is found in the "Persons Insured" section. As applicable here that provision provides:

"Each of the following is an insured under this insurance to the extent set forth below:

\*　　\*　　\*　　\*　　\*　　\*

(c) if the named insured is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such . . . . ."

Thus, if the individual police officers are to be covered, they must "find" their coverage in one or more of these provisions.

■ Under Indiana law, the objective in resolving disputes over the coverage provided in an insurance policy is to ascertain and give effect to the intent of the parties who negotiated the contract. *Meridian Mutual Insurance Co. v. Gulf Insurance Co.,* 366 N.E.2d 190 (Ind.App.1977). Unless ambigu-

ous language is used in the policy, the parties' intent is effectuated by giving the "plain, usual, ordinary meaning" to the policy terms. *Id.* In this instance, the parties contend, and the court agrees, that the coverage afforded by the North River policy is ambiguous. The ambiguity arises primarily because the insurer utilized a form of contract common to the private business world and its risks but foreign to the world of municipal corporations. *See, e. g., Ohio Farmers Insurance Co. v. Landfried,* 348 F.Supp. 486 (W.D.Pa.1972). Therefore, the court has accepted and utilized parol evidence bearing upon the intent of the parties in negotiating the North River policy.

There are two policy provisions which might possibly bear an interpretation which would afford coverage to the individual police officers. First is the policy definition of "Persons Insured" which includes "any executive officer, director or stockholder [of the organization] while acting within the scope of his duties as such . . . ." Second is the ambiguous "named insured" provision which lists the city and all of its component parts, with two exceptions neither of which are applicable here. Having considered the evidence presented at the trial of this cause, however, the court has determined that even construing the ambiguities most favorably to the insured, *see Taylor v. American Underwriters, Inc.,* 352 N.E.2d 86 (Ind.App.1976), the North River policy cannot be construed to extend coverage to the individual police officers under either of these provisions.

At the trial of this cause, Mr. Richard L. Maxwell, the insurance agent who negotiated the North River policy, testified that the policy was never intended to provide any individual liability coverage for the city's employees.[1] The policy was designed to cover only the liability which the *city* might incur as a result of its employees' actions. Mr. Maxwell further testified that the city was informed of this coverage and was offered an extended coverage which would apply to the individual employees' liability. The city rejected the extended coverage because of the additional cost involved. Since the city has presented no evidence rebutting Mr. Maxwell, the court finds no reason to reject his testimony concerning the North River negotiations. Thus, the court finds that the North River policy extends only to the liability, if any, which the city may be legally obligated to pay. The North River policy provides no coverage to the police officers individually.

### I B. CIVIL RIGHTS VIOLATIONS

 North River next contends that it provides no coverage for damages based upon civil rights violations because such violations do not fall within the policy definitions for bodily injury. As applied in this instance, the court disagrees.

The North River policy defines bodily injury as "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom." There can be no argument that all three of the persons involved in the March 4, 1976, incident sustained bodily injuries as that term is

---

1. Of course, the court would never allow Mr. Maxwell's testimony to eliminate coverage unambiguously provided by the insurance contract. For example, the policy provides certain coverage for the insured organization's "executive officer[s], director[s] or stockholder[s]." Obviously, these terms were meant to be applied to private corporate contexts where such offices exist and are clearly defined. Just as obviously, municipal corporations have no "directors or stockholders" as such. Municipal corporations do have executive officers and certain of their legislative officials might be analogized to "directors." Thus, for example, while the mayor and members of the city council may not be covered as "employees," they would be properly classified as "executive officers or directors." Even though the court accepts Mr. Maxwell's testimony regarding the parties' intentions in this action, the court would not allow his testimony to defeat the mayor's, or perhaps city council's, coverage as executive officers or "directors." However, in this action the court finds that there are no persons sued who could properly be classified as an executive officer or director of the municipal corporation.

defined in the North River policy. The essence of North River's argument is apparently that because those plaintiffs chose to proceed under 42 U.S.C. § 1983 they have converted a bodily injury claim which would be covered, into a civil rights claim, which allegedly is not covered. The court finds little merit to this argument.

Regardless of the underlying legal theory upon which the claim is based, it is the nature of the injury which controls whether North River will be liable to indemnify the city for any damages it may be obligated to pay. The predominant injuries here at issue are actual physical bodily injuries, and North River is liable for any compensatory damages awarded for such injuries.[2] To the extent, if any, which Ronald A. Woodward, David L. Mason, the estate of Joseph S. Higginbotham, Higginbotham's parents or Mason's mother recover damages for injuries other than those based upon actual, physical bodily injuries, then North River is not liable. These latter injuries, for which North River would not be liable, are often found in actions based upon allegations of false arrest, false imprisonment, or malicious prosecution. They do not relate to bodily injuries but to "personal" injuries, a term much broader in scope than bodily injuries. *See, e. g., Bituminous Fire & Marine Ins. Co. v. Izzy Rosen's, Inc.,* 493 F.2d 257 (6th Cir. 1974).

## I C. COVERAGE FOR OCCURRENCES ONLY

■ North River's final contention is that it provides no coverage for non-"occurrences", *i. e.,* intentional infliction of harm. The policy defines occurrence as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

North River contends that the injuries here at issue were not accidental but were intentionally inflicted by the police officers in the course of their employment. North River, by imputing the intent of the police officers to the city, would, therefore, deny coverage to the city. The court does agree that the policy, by its terms, excludes coverage for intentional acts, where those acts were intended to cause injury. *See, e. g., Home Ins. Co. v. Neilsen,* 332 N.E.2d 240 (Ind.App.1975). The court does not agree that the intent of the police officers, as agents and employees of the city, must be imputed to the insured city to determine if the occurrence was expected or intended from the viewpoint of the insured city.

The policy is, at best, ambiguous on the issue of imputed intent. As the court has previously recognized, many of the ambiguities inherent in this policy, and those similar to it, arise because the insurer chose to use a form of contract developed for private corporate application. This form of contract is in many instances poorly suited for use with a municipal corporation. Since the insurer chose this form of contract, the ambiguities will be construed against it. Since the contract is ambiguous as to imputed intent, the court will construe the policy against the insurer and find that imputed intent is not applicable. An injury will be found to be intentional or expected as to the city only if the actions producing the injury were taken at the direction of the city. For a collection of cases dealing broadly with the issue of intentional acts, see *Annot.,* 2 A.L.R.2d 1238 (1965); *Annot.,* 72 A.L.R.3d 1090 (1976).

Whether the injuries at issue in the underlying civil damage actions were intended by the individual police officers or intended

---

2. The parents' cause of action to recover damages for loss of a child's services, is viewed under Indiana law as being based upon a property right. *See, e. g., Rader v. Collins,* 130 Ind.App. 227, 161 N.E.2d 381 (1960). However, Indiana law also provides that those damages are properly chargeable to and payable from the "bodily injury" coverage of a liability insurance policy. *American Family Mutual Auto Ins. Co. v. Johnson,* 149 Ind.App. 26, 269 N.E.2d 560 (1971).

or expected by the city, because the police officers were acting at the direction of the city, is a factual question which the court need not answer. These questions can only be answered by the fact finder in the underlying civil damage actions. *See, e. g., All-Star Ins. Corp. v. Steel Bar, Inc.,* 324 F.Supp. 160 (N.D.Ind.1971). The potential findings of an intentional act does not in this instance abrogate North River's contractual duty to defend the city in those underlying actions, in accordance with the policy's provisions. *Id.*

## II. MARYLAND CASUALTY COMPANY

The Maryland Casualty Company provided an excess liability insurance policy to the named insured "City of Fort Wayne." By this policy, Maryland Casualty agreed to "indemnify the insured for ultimate net loss in excess of the retained limit which the insured by reason of liability imposed upon the insured by law or assumed by the insured under any contract or agreement, shall become legally obligated to pay as damages because of personal injury liability or property damage liability . . . to which this policy applies, caused by an occurrence." As this policy relates to the March 4, 1976, incident, Maryland Casualty contends (1) that it provides no coverage for civil rights violations; (2) that it provides only excess coverage as to those items of damage which are covered; and (3) that as an excess carrier it is not obligated to defend the underlying civil damage actions.[3] Implicit in Maryland Casualty's first contention is the argument that the American Home liability policy is not valid underlying insurance as described in the schedule of underlying insurance. The court will first consider the issue of underlying insurance.

## II A. AMERICAN HOME AS AN UNDERLYING CARRIER

■ By an amendatory endorsement, the Maryland Casualty policy provides that it "shall not apply to any liability for . . . personal injury arising out of (A) false arrest, false imprisonment, wrongful eviction, wrongful entry, wrongful detention or malicious prosecution; or (B) libel, slander, defamation of character, humiliation, or invasion of the rights of privacy; unless such liability is covered by valid and collectible underlying insurance described in the schedule of underlying insurance, and then only for such hazards for which coverage is afforded under said underlying insurance." Underlying insurance is defined as "the insurance policies described in . . . the Declarations or renewals or replacements thereof not more restrictive, and any other underlying insurance collectible by or payable on behalf of the insured."

The court fails to see any merit in Maryland Casualty's argument that the American Home insurance policy is not valid underlying insurance. The court finds that it is. The American Home policy is "other underlying insurance collectible by or payable on behalf of the insured." As such it is expressly within the Maryland Casualty definition of underlying insurance, and the fact that it is not specifically described in the schedule of underlying insurance is without legal significance.

## II B. COVERAGE FOR CIVIL RIGHTS VIOLATIONS

■ Maryland Casualty's broad definition of personal injury includes those actions often associated with civil rights actions, *e. g.,* false arrest, detention or imprisonment. Since the court has determined that the American Home insurance is valid underlying insurance and since American Home admittedly provides coverage for civil rights actions of the nature now at issue, the exceptions contained in the Maryland Casualty amendatory endorsement previously quoted are not applicable. Therefore, the Maryland Casualty policy does provide

---

**3.** Neither Maryland Casualty nor American Home deny that their policy coverage extends to both the city and the individual plaintiffs.

coverage, in accordance with the policy provisions for all personal injuries as therein defined. That is, while the North River policy is limited to "bodily injuries" (without regard to the underlying legal theory), both American Home and Maryland Casualty provide coverage not only for "bodily injuries" but also for the broader category of "personal injuries," *i. e.*, those injuries to the person which may not necessarily be evidenced by physical bodily injuries.

## II C. PRIMARY AND EXCESS COVERAGE UNDER THE POLICIES

 Maryland Casualty's second contention is that it provides only excess liability coverage. The North River policy explicitly states, and the court so holds, that it is primary insurance and is not reduced by any excess carrier's policy. The American Home policy, however, purports to provide only excess coverage "over any other valid and collectible insurance available to the insured." The Maryland Casualty policy provides "[i]f collectible insurance with any other insurer is available to the insured covering a loss also covered hereunder the insurance hereunder shall be in excess of, and not contribute with such other insurance . . . ." Thus, the American Home and Maryland Casualty policies superficially present the not uncommon situation of conflicting "excess" coverage provisions. The Indiana rule is to ignore these conflicting provisions and hold each "excess" insurer liable "for a prorated amount of the resultant damage not to exceed his policy limits." *Indiana Ins. Co. v. American Underwriters, Inc.*, 261 Ind. 401, 304 N.E.2d 783, 787 (1973). Upon a closer examination, however, the court finds that the "excess" clauses are not conflicting and that an order of priority of risk coverage between the three carriers is evident.

As applied in this instance, the North River policy explicitly provides primary coverage and is not "reduced by the existence of . . . other insurance." The American Home policy, construed as a whole, also appears to have been intended to provide primary coverage with a general "excess" clause utilized merely to avoid a double recovery by the insured. As between American Home and North River, there is no conflict in the contract provisions and American Home's "excess" clause will be given effect, *i. e.*, as to its policy coverage. North River is in relation to both American Home and Maryland Casualty primarily liable.

As between American Home and Maryland Casualty, there is a difference not only in the specificity of the "excess" clauses but also in the kind of clauses used. Construed as a whole, the Maryland Casualty policy was obviously intended to provide "umbrella" coverage for major liabilities. As previously indicated herein, Maryland Casualty's coverage is in some instances expressly conditional on the existence of valid underlying insurance. It is quite clear from all of the terms of the Maryland policy that it was negotiated and executed not as primary coverage but as an "umbrella" policy. As the court held in *Aetna Casualty and Surety Company v. Home Indemnity Company*, 330 F.Supp. 735, 737 (N.D.Ind.1971), "it seems only fair that a company [such as American Home] which uses an excess clause itself should be required to honor the same clause when other companies use it." Thus, the court finds that, as between American Home and Maryland Casualty and as between North River and Maryland Casualty, Maryland Casualty is an excess liability carrier.[4] In reaching this result, the court finds Indiana's general rule of pro-rating "excess" liability, as stated in

---

**4.** In connection with its contended status as only an "excess" carrier, Maryland Casualty argues that it has no duty to defend the underlying civil damage actions. The Maryland Casualty policy provides:

When underlying insurance does apply to an occurrence:
This policy does not apply to defense, investigation, settlement or legal expenses covered by the underlying insurance, but the Compa-

*Indiana Ins. Co. v. America Underwriters, Inc., supra,* inapplicable on the facts of this action.

## III. INSURANCE COVERAGE FOR PUNITIVE DAMAGES

■ A contention raised by all three defendants is that none of their policies afford coverage for any punitive damages which might be awarded in the civil damage actions.

The court would first note that none of the policies specifically excludes coverage for punitive damages. Furthermore, as a matter of positive contract coverage, each of the policies utilizes very broad language in designating the damages covered. *E. g.,* both North River and American Home agreed to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages [for matters covered under the policy]. Maryland Casualty's indemnification clause contained similarly broad coverage language. Thus, the court finds that, unless it is violative of public policy, all of the contracts do, by their own terms, provide coverage for punitive damages.

This court recently was called upon to determine whether "under the law of Indiana it contravenes public policy for an insured to avoid liability for a punitive damage award by means of insurance." *Norfolk & Western Ry. Co. v. Hartford Accident & Indemnity Co.,* 420 F.Supp. 92, 94–95 (N.D.Ind.1976). Although the instant action presents questions going beyond the scope of the *Norfolk & Western* decision, that case does present a convenient starting point.

In the *Norfolk & Western* action, defendant Hartford had issued a general liability insurance policy to the plaintiff railroad. Similar to the instant action, Hartford had undertaken to pay "all sums which the insured shall become legally obligated to pay as damages . . . ." *Id.* at 93. During the term of the policy, one of Norfolk & Western's employees, while operating an N&W truck was involved in a collision with another automobile. A jury returned a verdict against both Norfolk & Western and its employee granting both compensatory and punitive damages. The defendant Hartford paid the compensatory damages but denied any liability for the punitive damages.

In determining whether public policy prevented insurance coverage for punitive damage awards, this court first recognized that there were no Indiana decisions directly on point but that several Indiana decisions allowed "a likely prediction as to an Indiana court's resolution of the question." *Id.* at 95. In reviewing the Indiana decisions concerning the nature of punitive damages, the court noted that "[t]here is . . . a distinction to be made in Indiana law between liability for punitive damages directly imposed and such liability when vicariously imposed." *Id.* at 96. Based upon this distinction, the court found that "it would contravene public policy to allow the corporation to shift to an insurer the deterrent award imposed on account of the corporation's own wrongful acts [but that] it would not be inconsistent with public policy to allow the corporation to shift to an insurer the punitive damage award when that award is placed upon the corporation solely as a matter of vicarious liability." *Id.* at 97. That finding is equally applicable to the instant cause. Therefore, to the extent, if any, which an insured in this cause is held directly liable for acts or conduct giving rise to a punitive damage

---

ny shall have the right and opportunity to associate with Insured in the defense and control of any claim or proceeding reasonably likely to involve the Company . . . . In the event that the limits of liability of the underlying insurance are exhausted by an occurrence, the Company shall be obligated

to assume charge of the settlement or defense of any claim or proceeding against the Insured . . . . Since the court has found Maryland Casualty to be only an excess carrier, this provision is valid and applicable and Maryland Casualty's duty to defend is so limited.

award, the punitive damage liability cannot, as a matter of public policy, be shifted to an insurer. However, to the extent, if any, which an insured in this cause is held vicariously liable for such acts or conduct, public policy does not prevent the shifting of liability for the punitive damages to an insurer, where, as here, the insurers have contractually agreed to provide coverage for such liability.[5]

## IV. INSURANCE COVERAGE FOR CONTRACTUALLY ASSUMED LIABILITY

A final issue raised by this action concerns the effect of a certain state "indemnity" statute and a certain municipal "indemnity" ordinance, the latter apparently having been passed pursuant to the state law. *Ind. Code* § 34–4–16.7–1; Fort Wayne General Ordinance No. G–30–75.

The state statute provides in pertinent part:

> If a present or former public employee . . . is or could be subject to personal civil liability for a loss occurring because of a noncriminal act or omission within the scope of his employment which violates the civil rights laws of the United States, the governmental entity . . shall . . . pay any judgment, compromise, or settlement of the claim or suit when . . . the governing body of the political subdivision . . . determines that paying the judgment, compromise, or settlement is in the best interest of the governmental entity. . . .

The city ordinance provides in pertinent part:

The City shall provide legal services to any officer, employee or agent of the City, and any former officer, employee or agent of the City, who has been sued, or who is hereafter sued, or against whom a claim has been made or may hereafter be made relative to damages or liability arising out of actions or failures to act done in good faith in the performance of duty. The City shall hold harmless any officer, employee or agent, or former officer, employee or agent, from any liability or damages if it is determined that the act or failure to act which gave rise to liability or damages was done in good faith in the performance of duty . . . . .

■ Each of the insurers deny any liability based upon the aforementioned statute and ordinance. As to the state statute, the issue is relatively straightforward, and the court finds that it creates no obligation, nor enlarges any obligation, as to the insurers. The state law does not create any legal liability on the part of the municipality. It is, rather, an enabling statute allowing the municipality, in its discretion, to pay sums in indemnification of its agents. Such a discretionary payment is not included in the policies' provisions that the insurers shall pay "all sums which the insured shall become *legally* obligated to pay."

■ The effect of the City's ordinance is not quite as clear. The parties to this action have chosen not to deal with the ordinance as creating a legal liability, as such, on the part of the city to indemnify its employees but as a contractual obligation between the city and its employees. The

---

**5.** While the court need not, and will not, draw any legal conclusions from them, the court would note two other considerations relating to the punitive damage issue. First, a municipality cannot, under federal civil rights statutes, be held liable on the doctrine of respondeat superior. Therefore, the distinction between direct and vicarious liability for punitive damages is irrelevant as to the civil rights claim. As to these claims, the city could only be directly liable and, therefore, could not shift its liability for punitive damages to an insurer. Second, as to the applicable state law tort claims, punitive

damages cannot be awarded against the municipality. *Ind. Code* § 34–4–16.5–4. *See also City of Gary v. Falcone,* 348 N.E.2d 41 (Ind. App.1976). Furthermore, as to the state law tort claims, Indiana statutes bar an action against a municipal employee whose conduct underlies an action once a judgment (or settlement) is obtained against (or with) the municipal employer. *Ind. Code* § 34–4–16.5–5. Thus, without stating any final legal conclusions, it would appear that, as to the state law tort claims, punitive damages are, as a matter of law, foreclosed.

court will accept this characterization. The court finds that as a contractual liability assumed by the city, the insurers are not liable for any sums which the city may be obligated to pay.

The North River policy provides that the "company will pay on behalf of the insured all sums which the insured, by reason of contractual liability assumed by him under a contract designated in the schedule of this insurance, shall become legally obligated to pay . . . ." The City admits that the schedule referred to above does not include the contractual liability imposed by Ordinance No. G–30–75. Therefore, North River has no obligation in regard to the ordinance.

The American Home policy specifically excludes any contractual liability assumed by the insured. Since the City acknowledges this exclusion, there is no issue. American Home has no obligation in regard to the ordinance.

The City does argue, however, that Maryland Casualty is obligated to indemnify it for any liability assumed pursuant to the ordinance. The court disagrees. An amendatory endorsement to the Maryland Casualty policy specifically provides that "this insurance does not apply to liability assumed by any insured under any contract or agreement except insofar as coverage is provided by underlying insurance . . .." As the court has already determined, neither of the underlying policies provides contractual liability coverage. Therefore, Maryland Casualty has no obligation in regard to the ordinance.

## DECLARATORY JUDGMENT

In accordance with the foregoing Memorandum of Decision, it is hereby ordered, decreed, and declared:

I. That as to the insurance policy of defendant North River Insurance Company:

A. No coverage is provided for the individual plaintiff police officers;

B. Coverage is provided for the plaintiff city's liability, if any, resulting from an award of compensatory damages for actual, physical bodily injuries;

C. No coverage is provided for intentional acts which were intended to cause injury;

D. The coverage provided is primary to both the American Home Assurance Company's policy and the Maryland Casualty Company's policy.

II. That as to the insurance policy of defendant Maryland Casualty Company:

A. The American Home Assurance Company policy is valid underlying insurance;

B. Coverage is provided for both actual physical bodily injuries and personal injuries;

C. The coverage provided is excess to both the North River Insurance Company's policy and the American Home Assurance Company's policy;

D. The duty to defend is conditioned on exhaustion of the liability of the underlying insurance policies as provided in the policy.

III. That as to the insurance policies of all defendants:

A. Coverage is provided for punitive damages which are vicariously imposed on an insured but not for punitive damages which are directly imposed on an insured;

B. No coverage is provided for liability contractually assumed by an insured pursuant to either Fort Wayne General Ordinance No. G–30–75 or Ind. Code § 34–4–16.-7–1.