**AMERICAN CONCEPT INSURANCE COMPANY, Plaintiff and Appellee,**

v.

**CERTAIN UNDERWRITERS AT LLOYDS OF LONDON, Defendant and Appellant,**

and

**Merrill Reisenweber, Defendant.**

**No. 17041.**

Supreme Court of South Dakota.

Argued Sept. 19, 1990.

Decided March 13, 1991.

Derald W. Wiehl, Brenda L. Schnasa, May, Johnson, Doyle & Becker, P.C., Sioux Falls, for defendant and appellant.

Lawrence L. Piersol, Roberto A. Lange, Davenport, Evans, Hurwitz & Smith, Sioux Falls, for plaintiff and appellee.

HENDERSON, Justice.

## PROCEDURAL HISTORY/ISSUES

Certain Underwriters at Lloyds of London (Underwriters) appeal from a declaratory judgment action granted in favor of American Concept Insurance Company (American Concept) entered on February 6, 1990. In its complaint, American Concept requested that the trial court determine the obligations of the respective Insurance Companies in relation to insurance policies issued by them to Merrill Reisenweber (Reisenweber) with respect to the $55,000.00 settlement and the attorney's fees and costs incurred in defending Reisenweber in the underlying action of *Mammenga v. Reisenweber*, (Civil No. 86–0041 Minnehaha County, unreported case).

The trial court conducted a hearing on February 5, 1990, after the parties submitted cross-motions for summary judgment. Subsequently, the trial court granted summary judgment in favor of American Concept to the extent that Underwriters was required to pay one-half of the $55,000.00 settlement in the underlying action. The trial court also entered an Order on February 28, 1990, requiring Underwriters to pay one-half of the $13,424.56 incurred as attorney's fees and expenses.

On appeal, Underwriters allege that:

(1) "The Peacemaker" policy is written as an umbrella or true excess insurance policy and thereby provides only excess coverage to the named insured and,

(2) It is not liable for any portion of the attorney's fees or expenses incurred in defending Reisenweber.

—Holding—

We reverse, holding that American Concept, as the primary insurer, is liable for the entire settlement amount.

## FACTS

On or about November 25, 1984, Reisenweber accidentally shot and killed Johnie Dean Mammenga (Mammenga) while hunting in Marshall County, South Dakota. The administrator of Mammenga's estate filed a wrongful death and survival action against Reisenweber. This action was eventually settled for $55,000.00, which was paid by American Concept on behalf of Reisenweber. (Reisenweber held a general homeowner's policy with American Concept). American Concept also incurred $13,424.56 in attorney's fees and expenses in defending Reisenweber in that action.

In addition to the policy with American Concept, Reisenweber held an insurance policy with Underwriters called "The Peacemaker." This policy was issued to Reisenweber as a member of the National Rifle Association (NRA). Reisenweber's membership in the NRA automatically entitled him to coverage under this policy. Underwriters provided the underlying coverage to the NRA and its members at a cost of $1.21 per member through issuance of a master policy to the NRA. The NRA paid the $1.21 premium out of the NRA membership fee paid by its members. Both insurance policies were in full force and effect at all relevant times.

## DECISION

I. *"The Peacemaker" policy is written as an umbrella or true excess insurance policy and, therefore, provides only excess insurance to Reisenweber.*

Initially, it is necessary to set forth the pertinent terms of "The Peacemaker" policy issued by Underwriters and the homeowner's policy issued by American Concept. The relevant portion of "The Peacemaker" states:

With respect to occurrences covered under this policy, but not covered under any other valid and collectible insurance, Underwriters shall be liable as if this policy is primary insurance ...

On behalf of the insured all sums which the insured shall become legally obligated to pay as damages, all as defined by the term ultimate net loss, excess over any other valid and collectible insurance.

Underwriters shall be liable only for the ultimate net loss in excess of the amount payable under any other valid and collectible insurance.

The pertinent portion of the American Concept homeowner's policy states:

This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

■ As a general rule, when determining if two insurance companies provide insurance on the same loss, the question of their respective insurance obligations is determined by a construction of the language used by the respective insurers and not upon any arbitrary rule or circumstance. *Motor Vehicle Casualty Co. v. LeMars Mut. Ins. Co.*, 254 Iowa 68, 116 N.W.2d 434 (1962); *Travelers Indem. Co. v. National Indem. Co.*, 292 F.2d 214 (8th Cir.1961); *Woodrich Const. Co. v. Indemnity Ins. Co.*, 252 Minn. 86, 89 N.W.2d 412 (1958).

■ Both American Concept and Underwriters advocate that the above stated provisions exonerate them from liability. However, we hold that American Concept's argument is without merit. A breakdown of the American Concept policy and an examination of the Underwriters' policy clearly demonstrates this. The first part of American Concept's "other insurance" provision reads: "This insurance is excess over any other valid and collectible insurance ..." This means that if an American Concept policyholder has specific insurance as to a certain claim and that claim has not been satisfied, the American Concept policy will make up the difference.

The second portion of the American Concept provision reads: "except insurance written specifically to cover as excess over the limits of liability that apply in this policy." It is clear from this language that American Concept authorizes a policyholder to purchase additional insurance to cover losses in excess of the American Concept policy. In essence, the American Concept

policy is a primary policy which states that it will operate as an excess policy if an insured has other insurance which is considered primary to the loss. Assuming arguendo, an individual has both automobile insurance and a homeowner's policy. If the insured has a car accident, he must collect from his automobile insurance company (the more specific policy). The excess may then be picked up by a homeowner's policy, likened unto American Concept herein.

Reisenweber specifically bought a policy from American Concept to protect against all loss, up to a certain limit. But as mentioned earlier, the American Concept policy allows a policyholder to purchase more insurance. Reisenweber did buy such insurance by joining the NRA and obtaining its insurance. However, the NRA policy language is completely different from the American Concept policy language. We interpret it as saying that if a policyholder has no other insurance than that with the NRA, then the NRA is the primary coverage. However, if a policyholder has other insurance, then the NRA operates as a true excess or umbrella policy. Therefore, the trial court's reliance on *Royal Indemnity Co. v. Metropolitan Casualty Insurance Co.*, 80 S.D. 541, 128 N.W.2d 111 (1964) was misplaced.*

■ Umbrella or true excess insurance is regarded as providing true excess insurance coverage over and above any type of primary insurance coverage. *See generally*, Appleman, *Insurance Law & Practice*, § 4909.85 (1981). Thus, "The Peacemaker" policy is just the type of insurance to which the American Concept policy makes reference as "insurance written specifically to cover as excess" over a homeowner's policy limits.

Underwriters cite *Grant v. North River Insurance Company*, 453 F.Supp. 1361 (N.D.Ind.1978), in support of its position. In *Grant*, the appellants brought a declaratory judgment action to obtain a judicial

---

* In *Royal Indemnity,* this Court found both insurance policies in question provide excess coverage, and therefore, determine them to be "mutually repugnant." Liability was prorated among the insurers in this case.

determination of their rights under three different liability insurance policies. The *Grant* court determined that the excess clauses in these policies did not conflict and that the order of priority of risk coverage could be found by looking at the language of the respective policies. The *Grant* court went on to say that as between American Home and Maryland Casualty, two of the insurers in question, there is a difference not only in the "excess" clauses but also in the kind of clauses used. *Id.* at 1369. Construed as a whole, the Maryland Casualty policy was obviously intended to provide "umbrella" coverage for major liabilities. The *Grant* court further stated that it is quite clear from all of the terms of the Maryland policy that it was negotiated and executed not as primary coverage but as an "umbrella policy."

In the present case, the excess or other insurance clauses used in American Concept's policy and Underwriters' policy are different not only in the specific language of the clauses, but also in the kind of clauses used. "The Peacemaker" contains key phrases such as "shall not contribute" and "ultimate net loss" which are used to identify an insurance policy as umbrella or true excess. *See Allstate Ins. Co. v. Employers Liab. Assurance Corp.*, 445 F.2d 1278 (5th Cir.1971). In addition the low premium in comparison to the amount of coverage offered by the policy is another indication that "The Peacemaker" was intended to be an umbrella or true excess insurance policy. *See Fried v. North River Inn Co.*, 710 F.2d 1022, 1026 (4th Cir. 1983).

■ We find from the unambiguous language of "The Peacemaker" policy that Underwriters is not liable to American Concept for any of the amount paid by American Concept in settlement of the underlying action. American Concept is liable as the primary insurer for coverage up to its limits. Such an interpretation gives effect to the plain language in both policies.

## II. *American Concept is solely liable for the costs of defending Reisenweber.*

Underwriters assert that it is not liable for any portion of the attorney's fees or expenses incurred in defending Reisenweber. It relies on *American Surety Co. v. State Farm Mutual Automobile Co.*, 274 Minn. 81, 142 N.W.2d 304 (1966) in support of its position.

In *American Surety*, the Supreme Court of Minnesota stated that the primary liability insurer could not recover any portion of expenses incurred in defense of an action from the excess liability insurer because the actual recovery did not exceed the primary policy limits:

> Had the recovery exceeded the limitations of plaintiff's policy, defendant then would become equally liable with plaintiff for the expenses incurred in defending it. But where the recovery did not exceed such liability even though the complaint sought damages in excess of it, and where the insured was not damaged by defendant's refusal to defend in violation of its obligations under the policy, neither the insured nor plaintiff would have any recourse against defendant.

*American Surety* 142 N.W.2d at 306 (citation omitted).

The *American Surety* decision emphasized the lack of contractual agreement between insurers which would give a primary insurer the right to demand participation in the defense of an insured by an excess insurer. *Iowa Nat. Mut. Ins. Co. v. Universal Under. Ins. Co.*, 276 Minn. 362, 150 N.W.2d 233 (1967). The above stated principles have been approved by other authorities. *Signal Companies v. Harbor Ins. Co.*, 27 Cal.3d 359, 165 Cal.Rptr. 799, 612 P.2d 889 (1980); *West Am. Ins. Co. v. Allstate Ins. Co.*, 295 F.2d 513 (10th Cir. 1961).

■ Accordingly, it is clear American Concept is not entitled to recover from Underwriters any portion of its expenses incurred in defending Reisenweber in the original action. Since we determined that American Concept was the primary insurer and Underwriters was an excess insurer, and because the settlement made by American Concept was within its policy limits,

Underwriters cannot be required to contribute to American Concept's costs of defense.

Accordingly, the judgment below is reversed and the trial court is directed to enter a judgment in conformity herewith.

MILLER, C.J., WUEST and SABERS, JJ., and MORGAN, Retired J., concur.

AMUNDSON, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.