MUTUAL HOSPITAL INSURANCE, INC. and Mutual Medical Insurance, Inc., d/b/a Blue Cross and Blue Shield of Indiana, Appellants (Defendants),

v.

George HAGNER and Carol Hagner, Appellees (Plaintiffs).

No. 2–1183A414.

Court of Appeals of Indiana, Second District.

Dec. 27, 1984.

Ordered Published Feb. 26, 1985.

Donald C. Trigg, Wallace T. Gray, Indianapolis, for appellants (defendants).

Robert M. Bly, McIntyre & Bly, Kokomo, for appellees (plaintiffs).

BUCHANAN, Chief Judge.

## CASE SUMMARY

Defendants-appellants Mutual Hospital Insurance, Inc. and Mutual Medical Insurance, Inc., doing business as Blue Cross and Blue Shield of Indiana [hereinafter referred to as Insurance Companies], appeal from a judgment entered in favor of plaintiffs-appellees George and Carol Hagner (Hagners) that ordered the Insurance Companies to pay Hagners $744.25 under a contract of health insurance and an additional $5,000 as punitive damages, claiming the trial court erred in concluding that the treatment rendered to Hagners' son was not an excluded dental service under the contract of medical insurance and in awarding punitive damages when the record did not disclose clear and convincing evidence of conduct justifying such an award.

We affirm in part and reverse in part.

## FACTS

This litigation arose from an action on a contract of medical insurance between Insurance Companies and General Motors. The action was brought by George Hagner, an employee of General Motors and a beneficiary under the medical insurance program, and his wife Carol for payment of treatment rendered to their son Christopher Hagner (Christopher). The case was tried to the bench, and the evidence included discovery materials, stipulated items, and testimony.

Christopher, a child of two and one-half years of age, fell and broke several front teeth at the gum line. Christopher suffered from the pain of this injury, quit eating, lost weight, and ran the risk of severe infection. On October 7 and 8, 1979, Christopher was treated at St. Mary's Health Center in Jefferson City, Missouri. A dentist placed Christopher under a general anesthetic, removed the dead pulp from each tooth, filled the open wounds, and then covered the broken teeth with steel crowns. The total cost incurred by Hagners for Christopher's treatment was $1,178.28.

The Hagners then became involved in correspondence with the Insurance Companies which lasted almost two years. The initial claim for hospital expenses, received by the Insurance Companies on October 9, 1979, was immediately paid. But when Hagners submitted a claim to the Insurance Companies for the remaining $744.25 in medical expenses, the Insurance Companies requested, during January of 1980, that Hagners refund the amount previously paid toward hospital services and refused payment of the $744.25. The Insurance Companies' terse denial of the claim was based on the opinion that no "concurrent medical hazard" existed.

About May of 1980, Hagners requested a review of their insurance claim and submitted to the Insurance Companies a letter by Dr. Busby, the hospital staff physician at the time of Christopher's treatment, that attested to the related health problems suffered by Christopher as a result of his injuries. In response to this letter, the Insurance Companies withdrew their refund request and stated the hospital insurance claim was payable because it was accident related. The Hagners, convinced that if hospital services for Christopher were provided then medical services should also be covered, resubmitted their claim for the doctor's services. In August of 1980, Hagners' request was again denied, and again the Insurance Companies made a re-

fund request, this time through General Motors' insurance office.

Further correspondence of this type was carried on for several months by Hagners, the General Motors insurance office, and the Insurance Companies. In frustration, Hagners wrote, in January of 1981, to the president of the Insurance Companies, explaining their problem and asking for help. The Insurance Companies indicated that they would again review the claim. Finally, in June of 1981, the Insurance Companies responded with a letter detailing at some length the basis of their refusal of the Hagners' claim for medical treatment and dropping their request for a refund of the payment for hospital services. The Insurance Companies also offered to pay an additional $32.00 for first aid for Christopher.

This lawsuit ensued, and the trial court found the treatment rendered to Christopher was medically necessary and covered by the medical insurance policy under which Christopher was a beneficiary. The trial court also found the exceptions to coverage asserted by the Insurance Companies were inapplicable. In addition to an award of $744.25, the trial court awarded Hagners $5,000.00 in punitive damages. The trial court based the punitive damages award on the finding that the Insurance Companies had deliberately avoided payment of a covered claim, such conduct amounting to bad faith, oppressive conduct, fraud or malice.

## ISSUES

The Insurance Companies raise two issues for our review:

1. Whether the trial court erred when it concluded, as a matter of law, that the Hagners' claim was not excepted from coverage under the insurance contract?

2. Whether the trial court erred when it found the evidence to be clear and convincing that the Insurance Companies' conduct amounted to bad faith, oppressive conduct, fraud or malice?

## DECISION

ISSUE ONE—Whether the trial court erred when it concluded, as a matter of law, that the Hagners' claim was not excepted from coverage under the insurance contract?

PARTIES' CONTENTIONS—The Insurance Companies argue that the treatment rendered to Christopher was clearly excepted from coverage under the contract of medical insurance.

Hagners contend that Christopher's treatment was not subject to exceptions under the insurance contract.

CONCLUSION—The trial court did not err when it concluded that the treatment provided to Christopher was covered under the contract of medical insurance because the Insurance Companies failed to prove that such treatment was excepted from the general provisions of the medical insurance policy.

Because this case involves a mixed question of fact and law, the trial court was required to determine, as a matter of law, the effect of the insurance contract. The court also needed to determine the facts of the case and examine them according to its decision regarding the insurance contract. Christopher's injury and need for treatment were undisputed.

Hagners presented the expert testimony of Dr. William Leyda, Doctor of Dental Medicine specializing in oral and maxilofacial surgery, who characterized Christopher's condition as a traumatic bodily injury. *Record* at 434. The treatment of such injury, by excision of the dead pulp under a general anesthetic, fits the plain meaning of the Insurance Companies' contract provision for surgery, the latter defined as "operative and cutting procedures for the necessary . . . treatment of . . . injury." *Record* at 373.

The burden of proving an exception to this general provision was on the Insurance Companies. "An exclusionary clause is for the purpose of delimiting and restricting policy coverage. The object of

an 'exception' is to exclude that which otherwise would be included within it, so as to prevent misrepresentation." 13 J.A. APPLEMAN & J.A. APPLEMAN, INSURANCE LAW AND PRACTICE, § 7387 (1976) (citations omitted). "[A] common rule of contract and insurance law states that when performance is promised in general terms, followed by specific exceptions and limitations, the obligor has the burden of proving that the case falls [within] the exception." *Zebrowski & Assoc. v. City of Indianapolis* (1983), Ind. App., 457 N.E.2d 259, 262 (citations omitted). Because the Insurance Companies are appealing from a negative judgment on the issue of whether Christopher's treatment was excepted from the contract of insurance, an affirmative defense on which the Insurance Companies carried the burden of proof, we will reverse only if the evidence reasonably leads to only one conclusion which is contrary to that of the trial court. *Ross v. Ross* (1979), Ind.App., 397 N.E.2d 1066.

■ The burden was on the Insurance Companies to prove that Christopher's treatment was subject to the dental services exceptions contained in the policy.[1] The evidence was conflicting on this basic issue. Hagners introduced testimony that Christo-

pher's treatment was a surgical procedure for the treatment of infection and loss of weight resulting from a traumatic bodily injury. *Record* at 425–27, 434–35. Because the treatment was to repair a bodily injury and prevent more generalized health problems, the trial court could reasonably find that the treatment was not just a dental service, and therefore was not excluded by the contract language cited by the Insurance Companies. The Insurance Companies simply failed to prove how such treatment comes within the meaning of dental services as that term is employed in the contract of insurance. Several courts have held that the placement of crowns on the teeth as an adjunct to the treatment of temporomandibular joint syndrome, the latter requiring the repositioning of the jaw, is not excluded by a dental services exception. *See, e.g., Goss v. Medical Serv.* (1983), D.C., 462 A.2d 442; *Simpson v. State Mut. Life Assurance Co. of Am.* (1977), 135 Vt. 554, 382 A.2d 198. Similarly, the evidence in this case showed medical problems facing Christopher and his need for treatment thereof. Because the evidence was conflicting regarding the medical purposes of Christopher's treatment,

---

1. The Insurance Companies point to the following as the controlling contract language in this case. The cited language is from the Blue Shield or medical treatment portion of the contract. Similar language also appeared in the Blue Cross or hospital services portion of the contract. *Record* at 372. The distinctions between the two parts of the contract were not emphasized at trial and are not significant for purposes of this appeal.

"Dental Services
For the services indicated below, benefits shall also be payable when such services are performed by a D.D.S. or D.M.D.
a. Benefits are provided to cover oral surgery which most commonly includes, but is not restricted to, the following procedures:
(1) Excision of tumors and cysts of the jaws, cheeks, lips, tongue, roof and floor of the mouth
(2) Surgical procedures required to correct accidental injuries of the jaws, cheeks, lips, tongue, roof and floor of the mouth
(3) Excision of exostoses of the jaws and hard palate
(4) Treatment of fractured facial bones (maxillae or mandible)

(5) Incision and drainage of cellulitis
(6) Incision of accessory sinuses, salivary glands or ducts
(7) Reduction of, dislocations of, and excision of, the temporomandibular joints
b. The following services when performed on a hospital bedpatient: Multiple extractions or removal of unerupted teeth, and gingivectomies and alveolectomies, under general anesthesia, where the admission for the service is because a concurrent hazardous medical condition exists such as a serious blood dyscrasia, unstable diabetes, or a severe cardiovascular condition. Apprehension of the patient, regardless of age, does not entitle the patient to benefit coverage.
. . . .
Benefit Exclusions
In addition to those elsewhere excluded or limited, the following services are not covered:
. . . .
3. Dental services with the exception of the services provided in Part 3, Sec. II, A7, pages 3.11 and 3.12."
*Record* at 373.

we cannot say that the trial court erred, as a matter of law, when it concluded that such treatment was not subject to the dental services exception.

ISSUE TWO—Whether the trial court erred when it found the evidence to be clear and convincing that the Insurance Companies' conduct amounted to bad faith, oppressive conduct, fraud or malice?

PARTIES' CONTENTIONS—The Insurance Companies contend that the award of punitive damages was erroneous because the trial court found no evidence of bad faith, oppressive conduct, fraud or malice on the part of the Insurance Companies.

Hagners answer that clear and convincing evidence was presented at trial of the Insurance Companies' bad faith, oppressive conduct, fraud or malice.

CONCLUSION—The trial court did err when it found that the Insurance Companies' conduct amounted to bad faith, oppressive conduct, fraud or malice. The record discloses no more than a good faith dispute between the parties.

In reviewing the propriety of a judgment of punitive damages, we apply our normal standard of review in civil cases, keeping in mind, however, that the trial court may award punitive damages only upon a finding of clear and convincing evidence. *Orkin Exterminating Co. v. Traina* (1984), Ind.App., 461 N.E.2d 693.

Upon reviewing the record, we are convinced that the evidence presented at trial does not justify an award by the court of punitive damages. At most, the record shows a good faith dispute over the validity of the Hagners' claim. It is error to award punitive damages on such a factual foundation because of the "prohibitive social costs" of making such a claim indisputable. *See Vernon Fire & Cas. Ins. Co. v. Sharp* (1976), 264 Ind. 599, 349 N.E.2d 173. In addition, when establishing clear and convincing evidence to support an award of punitive damages in contract actions, "some evidence shall be required that is inconsistent with the hypothesis that the tortious conduct was the result of a mis-take of law or fact, honest error of judgment, over-zealousness, mere negligence or other such noniniquitous human failing." *Travelers Indem. Co. v. Armstrong* (1982), Ind., 442 N.E.2d 349, 362. The Insurance Companies' vacillation on the question of a refund, while perhaps supportive of a finding of malice, is not inconsistent with a hypothesis of honest error or over-zealousness. Because the evidence fails to satisfy the standard established by *Armstrong,* we must reverse the award of punitive damages.

Affirmed in part, reversed and remanded in part. Costs are apportioned one-half to Insurance Companies and one-half to Hagners.

SHIELDS, J., concurs.

SULLIVAN, J., concurs in result with separate opinion.

SULLIVAN, Judge, concurring.

Provision II.R.3. of the Blue Shield Oral Surgery and Dental Treatment Coverage provides, as quoted by the majority:

"Benefit Exclusions

In addition to those elsewhere excluded or limited, the following services are not covered:

\*      \*      \*      \*      \*      \*

3.   Dental services with the exception of the services provided in Part 3, Sec. II, A7, pages 3.11 and 3.12."

Record at 373.

It quite clearly excludes services not covered within II.A.7. It is this fact which places these dental services within the coverage of the other provisions. However, it is of no moment whether the treatment is "oral surgery" as defined in II.A.7.a. of the policy or is covered under II.A.7.b. because of the "concurrent hazardous medical condition" which clearly existed here. Coverage did exist under this policy and for that reason I concur in the majority's decision under Issue One.

I further agree that the punitive damage award must be reversed.