**INDIANA GAS COMPANY, INC., et al., Plaintiffs,**

v.

**AETNA CASUALTY & SURETY COMPANY, et al., Defendants.**

Civil No. 1:95cv101.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Oct. 2, 1996.

Sherrill W. Colvin, Haller and Colvin, Fort Wayne, IN, Ronald E. Christian, Whitney E. Bakley, Indiana Gas Company, Indianapolis, IN, Edward P. Henneberry, Ezra C. Levine, Peter C. Condron, Howrey and Simon, Washington, DC, Charles H. Samel, Howrey and Simon, Los Angeles, CA, for Indiana Gas Co., Richmond Gas Corporation, d/b/a

Indiana Gas Company, Terre Haute Gas Corporation, d/b/a Indiana Gas Company.

J. Frank Kimbrough, Wilks and Kimbrough, Fort Wayne, IN, Scott H. Sirich, Plunkett and Cooney, Detroit, MI, Charles W. Browning, Kenneth C. Newa, Stephen P. Brown, Richard G. Szymczak, Aetna Casualty & Surety Company, Detroit, MI, for Aetna Casualty & Surety Company.

Roger E. Warin, Evan Anne O'Neill, Harry Lee, John Flyger, James S. Felt, Steptoe and Johnson, Washington, DC, · David J. Bloss, Grand Rapids, MI, for Home Ins. Co.

James E. Rocap, Jr., Rocap Witchger and Threlkeld, Indianapolis, IN, Thomas J. Quinn, Stephen Thomas Roberts, Robert J. Keane, Mendes and Mount, New York City, Kandice L. Kilkelly, Rocap Witchger and Threlkeld, Indianapolis, IN, for Certain Underwriters at Lloyd's London.

William L. Sweet, Jr., Beckman Lawson Sandler Snyder and Federoff, Fort Wayne, IN, Kandice L. Kilkelly, Brian S. Fraser, Arthur S. Greenspan, Kenneth Held, Richards Spears Kibbs and Orbe, New York City, for Certain London Market Ins. Co.

William Anaya, James S. Stickles, Janet A. Kachoyeanos, Johnson and Bell Ltd., Chicago, IL, for Ranger Insurance Company.

Mary K. Reeder, Riley Bennett and Egloff, Indianapolis, IN, Mary Kay Reeder, Kathy P. Waring, Sonia S. Waisman, Luce Forward Hamilton and Scripps, San Diego, CA, for St. Paul Fire & Marine Insurance Company, St. Paul Surplus Lines.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on a "Motion for Summary Judgment on the Issue of Expected or Intended Property Damage" filed by the defendant Aetna Casualty & Surety Company ("Aetna") on July 10, 1996. The parties completed briefing the motion on August 9, 1996.

### Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago,* 916 F.2d 1254, 1256 (7th Cir.1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* *In re Matter of Wildman,* 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan,* 847 F.2d 368, 374 (7th Cir.1988); *Valentine v. Joliet Township High School District No. 204,* 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 322 (7th Cir.1992) (quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact," *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the plead-

ings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt,* 862 F.2d 646, 649 (7th Cir.1988); *Guenin v. Sendra Corp.,* 700 F.Supp. 973, 974 (N.D.Ind.1988); *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983).

So that the district court may readily determine whether genuine issues of material fact exist, under Local Rule 56.1, the moving party is obligated to file with the court a "Statement of Material Facts" supported by appropriate citation to the record to which the moving party contends no genuine issues exist. In addition, the non-movant is obligated to file with the court a "Statement of Genuine Issues" supported by appropriate citation to the record outlining all material facts to which the non-movant contends exist that must be litigated. *See, Waldridge v. American Hoechst Corp. et al.,* 24 F.3d 918 (7th Cir.1994). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson,* 477 U.S. at 249–251, 106 S.Ct. at 2511. Furthermore, in determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion. L.R. 56.1

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355–56; *First National Bank of Cicero v. Lewco Securities Corp.,* 860 F.2d 1407, 1411 (7th Cir.1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–252, 106 S.Ct. at 2511–12. Finally, the court notes that, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank,* 704 F.2d 361, 367 (7th Cir.1983).

### Discussion

The plaintiffs, Indiana Gas Company, Inc., Richmond Gas Corporation and Terre Haute Gas Corporation (collectively "Indiana Gas"), commenced this action by filing a complaint for declaratory judgment and breach of contract because of the refusal of the five remaining defendant insurance companies to pay claims for third-party property damage tendered to them by Indiana Gas under comprehensive general liability insurance policies. According to Indiana Gas, the underlying property damage arises out of the historical gas manufacturing operations that took place at certain properties now owned by Indiana Gas.

From the early 1800's until natural gas became widely available in the 1940's and 1950's, gas for heating, lighting and cooking was manufactured by superheating coal and, later, coal combined with oil. During the manufactured gas era, more than 1,500 cities and towns across the country had a town gas plant that manufactured and stored gas until it was distributed directly to the homes and businesses of the town through a pressurized underground gas pipeline distribution system. The gas manufacturing process created tar, as well as other residuals and wastes, as a by-product. Unfortunately, the residuals, wastes and by-products from the gas manufacturing process contained hazardous constituents, such as benzene, which have been discovered in the subsurface soil and groundwater at properties where these manufac-

tured gas plants ("MGPs") were operated. Nine such former MGP sites: Shelbyville, Lafayette, Bedford, Greencastle, Huntington, Marion, Richmond, Seymour, and Terre Haute, Indiana, are at issue in the claims for property damage which underlie this lawsuit for insurance coverage.

Indiana Gas claims that it has incurred and will continue to incur millions of dollars in liabilities as the result of state and federal law requirements to respond to the property damage at and near certain former MGP sites. According to Indiana Gas, damage to groundwater beneath the former MGP sites from subsurface leaching and migration began at most locations prior to 1955 and continues to the present day.

■ In support of its motion for summary judgment[1], Aetna first argues that Indiana Gas has the burden of proving all components of the definition of "occurrence" including that it neither "expected nor intended" to cause property damage. The insuring language contained in the general liability policies at issue in this litigation provides as follows:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which the insurance applies, caused by an **occurrence**.... (emphasis added)

The term **occurrence** is defined in the policies as follows:

> "Occurrence" means an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or **property damage neither expected nor intended from the standpoint of the insured**.... (emphasis added)

According to Aetna, most of the policies at issue in this litigation have identical or functionally identical insuring language.

Aetna contends that Indiana Gas bears the burden of proving that its claim is within the coverage provided pursuant to its insurance contracts, including that property damage was caused by an "occurrence". Indiana Gas, however, asserts that unless the defen-

dant insurers can prove, by a preponderance of the evidence, that Indiana Gas expected or intended to cause property damage, Indiana Gas will prevail. The parties do not dispute that the settled law is that the policyholder has the burden of proving facial coverage under an insurance policy. *Allstate Co. v. Neumann,* 435 N.E.2d 591, 594 (Ind.App. 1982). Likewise, the parties do not dispute that the defendant insurance companies bear the burden of proving that the claim falls within an express exception contained in the policy. *Mut. Hosp. Ins., Inc. v. Hagner,* 475 N.E.2d 32, 34 (Ind.App.1994).

The dispute in the present case is Indiana Gas' assertion that the "expected or intended" language, regardless of where it appears in an insurance policy, constitutes an "exclusionary clause" for which defendants bear the burden of proof, because it limits the grant of coverage. The cases cited by Indiana Gas simply do not support its assertion. For example, in *Southbend Escan Corp. v. Federal Ins. Co.,* 647 F.Supp. 962, 966 (N.D.Ind.1986), the trial court simply held that "if insurance is promised in general terms followed by specific exceptions, the insurance company has the burden of proving that a case falls within an exception." The *Southbend* court cited to *Mutual Hospital Ins., Inc. v. Hagner,* 475 N.E.2d 32, 34 (Ind. App.1984), in support of its holding. Both parties in the present case have relied on *Hagner.* Neither *Southbend* nor *Hagner* held that general definitional language in a policy constitutes an "exclusionary clause" or a "specific exception" such that the burden of proof would fall on the insurer. It is clear to this court that the "expected or intended" language is not an exclusionary clause even though, in a sense, it limits the coverage provided. Most of the language in an insurance policy limits coverage to some degree, as to define what is covered will necessarily exclude what is not covered.

■ Indiana Gas next argues that it is not the "successor" to Public Service Company of Indiana ("PSI") and therefore could not have expected or intended any damage that PSI may have caused at the sites. Indiana Gas

---

1. Other defendants have joined in Aetna's motion for summary judgment.

states that it was formed in 1945, and the new company then acquired certain assets from PSI, although PSI continues to exist. In its reply brief, Aetna contends that whether Indiana Gas is the "successor" to PSI is irrelevant for the purposes of the motion presently before the court. Aetna explains that it issued its first policy to Indiana Gas in 1968 and the earliest policy at issue in this case is a London Market policy issued in 1952. Aetna claims that the undisputed evidence reveals that Indiana Gas knew well before 1952 that property damage would occur at its MGPs due to the improper disposal of MGP wastes. This court agrees that as long as the defendant insurance companies are limiting their inquiry to what Indiana Gas itself expected or intended with respect to the disposal of its waste products, then it is irrelevant whether Indiana Gas is a successor to PSI. Likewise, the issue of whether PSI expected or intended to cause property damage when it operated the sites is irrelevant to the issue of whether Indiana Gas expected or intended to cause property damage.

◼ In support of its motion, Aetna claims that it is entitled to summary judgment because Indiana Gas both expected and intended property damage at its MGPs. Aetna argues that Indiana courts have held that intent to injure or damage can be established by showing actual intent or by demonstrating that the nature of the act is such that intent to cause harm must be inferred as a matter of law. In *Allstate Ins. Co. v. Herman,* 551 N.E.2d 844, 845–46 (Ind.1990), the Indiana Supreme Court held that the word "intentional" refers to the volitional performance of an act with an intent to cause injury, although not necessarily the precise injury or severity of damage that in fact occurs[2]. Thus, the Indiana Supreme Court held that, as a matter of law, an act deliberately committed, which any *reasonable person* would deem calculated to cause injury, is an intentional act excluded from insurance coverage. *Herman* is the only Indiana Supreme Court decision on this issue, and this court will follow *Herman* and apply an objective standard when inferring intent.

Aetna acknowledges that the Indiana Supreme Court has not addressed whether an insured's *expectations,* like an insured's intentions, should be determined based upon a subjective or objective analysis. However, Aetna contends that based on the Indiana Supreme Court's decision in *Herman,* it is fair to assume that the Indiana Supreme Court would rely on a similar objective analysis when determining an insured's expectation of injury since expectation requires a lesser degree of proof than intent. *Auto-Owners Ins. Co. v. Stroud,* 565 N.E.2d 1093, 1095 (Ind.App.1991). This court agrees with Aetna on this point and will analyze Indiana Gas' intentions and expectations pursuant to an objective standard.

◼ Aetna claims that, under the objective standard, it is clear that Indiana Gas expected or intended some degree of property damage at its former MGPs. Aetna argues that the undisputed evidence reveals that the general community and gas industry was well aware of the hazards associated with coal tar and other MGP wastes even prior to the 1930s and, at the very least, by the late 1940s. Aetna also claims that the knowledge of all Indiana Gas employees may be imputed to Indiana Gas when determining its expectations and intentions. Indiana Gas, however, argues that the insurers bear the burden of showing that *corporate management,* and not simply lower level corporate employees, expected or intended to cause the injury. Indiana Gas relies on *Grant v. North River Ins. Co.,* 453 F.Supp. 1361, 1367 (N.D.Ind. 1978)[3], and Aetna relies on *In re Texas Eastern Transmission Corp.,* 870 F.Supp. 1293, 1307–08 (E.D.Pa.1992).

---

**2.** This language in *Herman* precludes Indiana Gas' argument that the defendant insurance companies must prove that Indiana Gas engaged in an intentional act with the intention of bringing about certain results.

**3.** Indiana Gas also cites to three other cases. However, these three cases are completely irrelevant to the issue. For example in *Wayne Tp. Bd. Of Sch. Com'rs v. Indiana Ins. Co.,* 650 N.E.2d 1205, 1209 (Ind.App.1995), the insurance policy at issue expressly provided that the insurance coverage was to be applied separately to each insured, thus a teacher's intentional act of child molestation could not be imputed to the school.

In *Grant*, the City of Fort Wayne purchased a general liability insurance policy. After a motorist was mistakenly killed by City police officers, a suit was instituted to determine whether the City's insurer was obligated to pay damages arising out of a civil rights lawsuit filed against the City. The *Grant* court noted that the policy was silent on the issue of imputed intent "because the insurer chose to use a form of contract developed for private corporate application. This form of contract is in many instances poorly suited for use with a municipal corporation." 453 F.Supp. at 1367. As the insurer chose the "poorly suited" form of contract, the contract was construed against the insurer and the court found that imputed intent was not applicable. *Id.* The court held that "[a]n injury will be found to be intentional or expected as to the City only if the actions producing the injury were taken at the direction of the City." *Id.*

Aetna contends that *Grant* is not pertinent to the present case because Indiana Gas is not a municipal corporation. Aetna argues that this court should follow *Texas Eastern*, in which the court held that "information known to an employee which relates to the performance of the employee's job will be imputed to Texas Eastern." 870 F.Supp. at 1308. This court finds *Texas Eastern* to be the more pertinent decision. As Judge Eschbach noted in *Grant*, a municipal corporation is unlike a business corporation. All of the employees of a business corporation are directly engaged in the narrow pursuit of furthering the corporation's business. Moreover, the settled law in Indiana is that the knowledge of an employee is imputed to the employer through agency principles and the doctrine of *respondeat superior. Stump v. Indiana Equipment Co., Inc.*, 601 N.E.2d 398, 403–04 (Ind.App.1992).

■ Having determined the legal principles by which this motion is governed, this court will next examine the evidence proffered by the parties. Aetna first argues that Indiana Gas' own employees recognized the hazards and environmental impacts associated with the manner in which tar was disposed of at its MGPs. Aetna discusses the deposition testimony of several former Indiana Gas employees. These employees testified generally that they understood the aquatic cycle and knew that groundwater could become contaminated if "unclean" substances were placed on or in the soil. However, these employees further testified that they did not know that coal tar contained any hazardous substances. In fact several witnesses testified that they used to chew on coal tar when they were children, and no one ever told them that it was not good for them or would make them sick. The witnesses testified that they knew that tar was put on the ground to make roads, and that hard tar was often used to seal various objects so that water would not leak out of or into the object. Thus, the testimony of Indiana Gas' former employees does not support Aetna's assertion that Indiana Gas expected or intended that its operations would cause property damage.

Aetna next argues that Indiana Gas' knew that property damage was certain to result from its routine tar waste disposal practices because the properties surrounding the plant often exhibited significant environmental damage before 1950. One witness, Jack Towns, testified that he grew up in Shelbyville across from the Shelbyville MGP. Towns testified that as a child he swam in the Big Blue River, and recalled oil slicks rising to the surface of the river. (Towns Dep. at 210–11). Towns further testified that a bayou, which no longer exists, was filled with tar and sludge. However, Towns testified that he did not know at the time where the tar and sludge came from, although his guess now is that it came from the MGP. (Towns Dep. at 210–11, 216). Based on this testimony, Aetna concludes that it is clear that the property surrounding the MGPs exhibited significant signs of the deleterious effects of the improper disposal of coal tars and other manufactured gas residuals even in the 1940s. Aetna argues that Indiana Gas chose to ignore these "obvious problems" and cannot now avail itself of insurance coverage for property damage that manifested itself decades ago.

Aetna further contends that in recent litigation (the "ICWC action"), Indiana Gas acknowledged that from 1945–67 it had a stat-

utory obligation to prevent coal tar from seeping into the groundwater. The essence of Aetna's argument is that since Indiana Gas knew that it had a duty to prevent coal tar from seeping into the groundwater, Indiana Gas' disposal of coal tar in such a manner that it would seep into the groundwater constitutes an act that was certain to result in damage to the environment. Under the objective standard, committing an act that a reasonable person would know is certain to cause damage is tantamount to intending to cause damage. Indiana Gas admits that it acknowledged, in the ICWC action, that it had a statutory duty not to pollute groundwater from 1945–67. Nevertheless, Indiana Gas argues that this acknowledgment of statutory duty is not evidence that Indiana Gas expected or intended to harm the environment by its disposal of wastes.

In further support of its argument that Indiana Gas knew that its disposal practices were certain to damage the environment, Aetna cites to a 1927 Indiana statute which provides, in pertinent part:

SECTION 1. Be it enacted by the general assembly of the State of Indiana, That it shall be unlawful for any person, firm, or corporation to throw, run, drain or otherwise deposit into any of the waters of this state, or to cause, permit or suffer to be thrown, run, drained or otherwise deposited into any such water or waters, any dyestuff, acid, **coal-tar,** oil, log wood or any by-products or derivative of any such, or any other poisonous substance, which of itself is **deleterious to the public health** or to the prosecution of any kind of industry, lawful occupation or calling for which, or in which any such water or waters are or may lawfully be used or employed, or whereby the carrying on of any agricultural, floricultural or horticultural pursuit may, or shall be, adversely affected, or whereby any live stock industry or the use of any such water or waters by or for domestic animals, may be lessened or impaired, or whereby any lawful use of any such water or waters by the State of Indiana or any political subdivision thereof may be lessened or impaired or materially interfered with, or whereby any beneficial animal or vegetable life in said water or waters may be destroyed or jeopardized.

Chapter 45 of Indiana Acts 1927, S.42 (emphasis added). Aetna argues that since the statute unequivocally indicates that it is concerned with the improper disposal of coal tars because they are "deleterious to public health", Indiana Gas knew that damage was certain to occur.

Indiana Gas has taken the position that the 1927 statute was concerned with damage to streams generally, and not with the protection of human health. Indiana Gas claims that, when read as a whole, the concern of the statute is with the effect pollution might have on the ability of others to use the stream for commercial and agricultural purposes. Indiana Gas has submitted the report of its expert witness Dr. Barbara Beck. At page 6–1, Beck's report states that:

During the MGP era, MGP wastes were associated with nuisances, such as foul tasting and smelling drinking water, and ecological effects such as fish kills. Based on my review of medical and scientific literature from the late 1800s to the 1950s, these nuisances and ecological effects were not associated with human health risks, nor were they interpreted as indicative of potential human health risk. MGP wastes at the concentrations present in the environment during the MGP era simply were not associated with potential human health risks.

Indiana Gas has also submitted the report of Dr. Richard T. Dewling. At pages 6–7 of his report, Dewling states:

Land disposal practices throughout this time, which included open burning of wastes to reduce volume, were controlled only by the general need to avoid creating a public health impact and nuisance, such as bad smell or a visual blight—problems that one could see, smell, taste, or touch. On- or off-site "dumps", man-made ponds, and low-lying areas were generally used for the ultimate disposal of municipal and industrial wastes not discharged to waterways or sent to sewers. Up until the 1970s, what few landfill controls existed were focused only on the basics of sanita-

tion, such as rodent control and the prevention of fires. The early concept of the "sanitary" landfill was to cover the waste with soil to reduce pests and vermin, create separate chambers of earth to reduce the spread of fire, and control odor and unsightly appearance—the key environmental concerns of the time.

This expert testimony is ·fatal to Aetna's claim that, as a matter of law, Indiana Gas expected and/or intended to damage the environment by virtue of its disposal practices. Although evidence such as Jack Towns' description of oil slicks rising to the surface of the Big Blue River indicates that what we now know as contaminants were being released into the environment, the evidence as a whole demonstrates the existence of an issue of material fact as to whether Indiana Gas expected or intended to damage the environment.

### Conclusion

For all of the foregoing reasons, Aetna's motion for summary judgment (as joined by other defendants) on the issue of "expected or intended damages" is hereby DENIED.