**ERIE INSURANCE GROUP,**
**Plaintiff–Appellee,**

v.

**SEAR CORPORATION, Larry Bass,**
**and Birch Dalton, Defendants–**
**Appellants.**

**No. 96–1831.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 24, 1996.

Decided Dec. 16, 1996.

John C. Trimble (argued) and Richard K. Shoultz, Lewis & Wagner, Indianapolis, IN, for Plaintiff–Appellee.

Richard A. Cook (argued) and Richard R. Skiles, Skiles & Reed, Indianapolis, IN, for Defendants–Appellees.

Before POSNER, Chief Judge, HARLINGTON WOOD, Jr., and ESCHBACH, Circuit Judges.

ESCHBACH, Circuit Judge.

Defendants-appellants Sear Corporation, Larry Bass and Birch Dalton (collectively "Sear") appeal the district court's grant of summary judgment in favor of plaintiff-appellee Erie Insurance Group ("Erie"). Erie initiated this action against its insured, Alliance Environmental Group ("Alliance"), and Sear, seeking a declaratory judgment that it had no duty to defend or indemnify Alliance in Sear's underlying lawsuit against Alliance. The district court granted summary judgment in Erie's favor, and declared that Erie had no duty to defend or indemnify Alliance in the Sear lawsuit. For the reasons below, we now affirm that decision.

## I. FACTS

In 1991, the Lafayette School Corporation ("LSC") hired Sear to conduct an asbestos removal project in the "B" pump room of the Lafayette–Jefferson High School in Lafayette, Indiana. Eight months after Sear completed the removal, an LSC employee discovered additional contaminated material in an air handling unit in the "B" pump room. LSC then hired Star Environmental, Inc. to remove the remaining asbestos, and hired Alliance to investigate the source of the material and to assign responsibility for its presence in the pump room. After its investigation, Alliance reported that Sear failed to remove all of the asbestos at the high school. Presumably based on Alliance's report, LSC eventually brought an action against Sear for faulty asbestos removal work, to which Sear responded by filing a third party complaint against Alliance for tortious interference with contract, defamation, and civil rights violations.

During the pendency of Alliance's consultation work for LSC, Erie insured Alliance under a general liability policy that included coverage for "advertising injury" inflicted by Alliance employees (the "Erie policy"). Under the Erie policy, "advertising injury" includes defamatory statements made by Alliance employees about another organization's products or services, but only if the statements are made "in the course of advertising" Alliance's services. After receiving notice of the charges against it in the LSC–Sear lawsuit, Alliance made a claim on Erie for defense and indemnity under the Erie policy. Erie denied the claim and filed this suit in federal district court under diversity jurisdiction, seeking a declaratory judgment that it had no duty to defend or indemnify Alliance under the policy.

On cross motions for summary judgment, the district court granted Erie's motion, finding that Erie had no duty to defend or indemnify Alliance in part because the advertising injury coverage provision in the Erie policy did not cover Alliance's allegedly defamatory statements against Sear.[1] We are now asked to review this finding on appeal.

## II. STANDARD OF REVIEW

We review the district court's entry of summary judgment de novo. Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc., 40 F.3d 146, 150 (7th Cir.1994). Summary judgment is appropriate when the pleadings and supporting documents reveal no genuine issue of material fact left for decision, and the moving party is entitled to judgment as a

1. At the district court, the parties also argued the applicability of the Erie policy's separate "personal injury" coverage provision. The court found that coverage inapplicable because Alliance's actions fell within the exclusion to that coverage for personal injury damages due to service of a professional nature. This decision is not challenged on appeal.

matter of law. Fed.R.Civ.P. 56(c). In our review of the grant of summary judgment for Erie, we must view all evidence and draw all reasonable inferences in the light most favorable to Sear, the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

The central dispute in this case is whether Alliance's alleged defamation of Sear occurred "in the course of advertising" Alliance's goods, products or services, thus requiring Erie to defend and indemnify Alliance under the advertising injury provision of the Erie policy. Our resolution of this dispute turns on the meaning of the term "advertising" as used in the phrase "in the course of advertising" in the policy. As a federal court sitting in diversity, we must evaluate the district court's application of relevant Indiana substantive law. *See Colip v. Clare,* 26 F.3d 712, 714 (7th Cir.1994). Interpretation of terms in an insurance policy is a question of state contract law. *Tate v. Secura Ins.,* 587 N.E.2d 665, 668 (Ind.1992). However, because the precise legal interpretation we face has not been addressed by the Indiana Supreme Court, we must make our best determination of how that court would resolve the issue. *Todd v. Societe Bic, S.A.,* 21 F.3d 1402, 1405 (7th Cir.1994). In so doing, we consider relevant authority of other jurisdictions that have addressed the issue.

Instead of our immediate resolution of the state law contract interpretation issues before us, Sear requests that we stay proceedings pending certification of those issues to the Indiana Supreme Court. Although this Court is vested with the authority to certify dispositive questions of state law to a state's highest court, we decline to do so here.

Certification is proper where a federal court is considering questions of state law the outcome of which will be dispositive. *Todd,* 9 F.3d at 1222, 7th Cir. R. 52. The Supreme Court of Indiana is authorized to accept certified questions when there are "no clear controlling precedents in the decisions of the Supreme Court of [Indiana]...."

Ind. R.App. P. 15(O). Although the meaning of "advertising" in a policy offering coverage for "advertising injury" which occurs "in the course of advertising" the insured's goods or services has not been addressed by the Indiana Supreme Court, we receive ample assistance from general principles of contract interpretation and persuasive authority from other jurisdictions that have interpreted similar provisions. · Although the ultimate resolution of this issue would no doubt be aided by decisions from Indiana courts, certification is discretionary, and mere difficulty in ascertaining state law does not justify the delay incumbent to a stay pending certification in all cases. Specifically, this court has found such a delay inappropriate in cases where the outcome of the analysis would produce a fact bound, particularized decision lacking broad precedential significance. *See LTV Steel Co., Inc. v. Northwest Engineering & Const., Inc.,* 41 F.3d 332, 338 (7th Cir.1994) (citing *Woodbridge Place Apartments v. Washington Square Capital, Inc.,* 965 F.2d 1429 (7th Cir.1992)). Our analysis in this case involves the interpretation of a specific insurance policy as negotiated between two business entities and as applied to particular factual circumstances. It is difficult to see how the interpretation of one of these coverage terms could have a far-reaching precedential effect for others. Sear's request for certification is denied.

## III.  DISCUSSION

### A.

Before we reach the merits of the policy interpretation issue, we must first address the parties' disagreement over the proper assignment of the burden of proof. Under Indiana law, the insured is required to prove that her claim falls within the coverage provisions of her policy. *Mutual Hosp. Ins., Inc. v. Hagner,* 475 N.E.2d 32 (Ind.Ct.App. 1984); *Allstate Ins. Co. v. Neumann,* 435 N.E.2d 591, 594 (Ind.Ct.App.1982). However, if insurance is promised in general terms followed by specific exclusions or limitations, the insurance company bears the burden of proving the applicability of the exclusion. *Mutual Hospital,* 475 N.E.2d at 34 (citing *Zebrowski & Assoc., Inc. v. City of India-*

*napolis,* 457 N.E.2d 259, 262 (Ind.App.Ct. 1983)).

The parties disagree about whether the language at issue is properly characterized as a coverage provision or an exclusionary provision, thus producing conflict about the proper assignment of burden. The relevant language of the policy provides:

*Advertising Injury Liability*—Coverage H

We will pay for damages because of advertising injury for which the law holds anyone responsible and which are covered by your policy. We *cover only advertising injury caused by an offense committed* during the policy period and *in the course of advertising your goods, products or services* and which takes place in the covered territory.

(emphasis added). Sear argues that Erie has the burden to prove that Alliance's alleged defamatory remarks occurred "in the course of advertising" Alliance's services. Sear bases its argument on an assertion that the italicized language in "Coverage H" above is a limitation on the general coverage language in the first sentence, citing *Zebrowski* as support. Erie counters that the phrase "in the course of advertising" is not an exclusion, but part of the definition of coverage, and we agree.

Although the second sentence in the above provision, which includes the coverage requirement that the advertising injury occur "in the course of advertising," may literally limit the coverage set out in the first sentence of "Coverage H," we think Sear has made too mechanical an application of *Zebrowski.* One reason for requiring the insurer to prove the application of exclusionary provisions is that insurance companies often place the exclusionary provisions far from the coverage provisions in the policy, resulting in misled insureds. This possibility is alleviated where the "limiting" language is not hidden in the back pages of a lengthy and obtuse policy.

In *Fuja v. Benefit Trust Life Insurance Co.,* 18 F.3d 1405 (7th Cir.1994), we affirmed the district court's burden of proof analysis on similar facts. The dispute in *Fuja* involved a medical insurance policy that provided coverage for health care treatments that were "medically necessary." The district court held that although the "medically necessary" provision—which was contained in the coverage section of the policy—seemingly limited the coverage, the burden was on the insured to prove eligibility because the language "fell within the purview of the contract's benefit section." *Fuja v. Benefit Trust Life Insurance,* 809 F.Supp. 1333, 1337 (N.D.Ill.1992). Like the policy in *Fuja,* the limiting language in the Erie policy is not hidden away in a complex litany of exceptions to general coverage. Instead, the Erie policy's "in the course of advertising" language is easily found in the advertising injury coverage provision, and serves to define the scope and purpose of that provision's coverage. *See Hartford Ins. Co. v. Occidental Fire & Cas. Co.,* 908 F.2d 235, 239 (7th Cir.1990); *see also Sentry Ins. v. R.J. Weber Co., Inc.,* 2 F.3d 554 (5th Cir.1993) (policy clause restricting advertising injury coverage to offenses committed in the course of advertising was not an exclusion but rather part of coverage definition, thus insured had burden to prove coverage). The Erie policy's advertising injury provision defines coverage as including defamation made "in the course of advertising" Alliance's services. Thus, Sear has the burden to prove its entitlement to coverage, and must establish that Alliance's alleged defamation was an advertising injury which occurred in the course of advertising Alliance's products or services. Sear has not met this burden.

### B.

Turning now to the policy interpretation issue, we begin, as we must, with the language of the relevant policy provisions. The section of the Erie policy entitled "Advertising Injury Liability—Coverage H" provides coverage for advertising injury committed by Alliance, as long as that advertising injury occurred "during the policy period and in the course of advertising [Alliance's] goods, products or services." The policy then defines "advertising injury" in part as injury arising out of "oral or written publication of material that slanders or libels a person or organization or disparages a per-

son's or organization's goods, products or services." Thus, the sole issue for our resolution is whether Alliance made the allegedly defamatory statements about Sear's work "in the course of advertising" its own services.

Sear argues primarily that because the term "advertising" as used in the phrase "in the course of advertising" is ambiguous, it should be construed broadly in the insured's favor to include one-on-one "bad mouthing" of a competitor's product. This argument misses the mark for several reasons. First, Sear relies on our decision in *Playboy Enterprises, Inc. v. St. Paul Fire & Marine Insurance Co.*, 769 F.2d 425 (7th Cir.1985) (interpreting Illinois law) to argue ambiguity. This reliance is misguided. In *Playboy*, we were called on to decide whether certain activity constituted "publications or utterances in the course of or related to advertising." Although we found an ambiguity in the policy language, our finding rested on difficulty in determining what activity could be considered "related to" advertising. *Playboy*, 769 F.2d at 429. We do not face this dispositive complication in interpreting the Erie policy.

■ Second, Sear points to the term's ambiguity on the basis of conflicting case law on the issue of whether one-on-one contact with a client, as opposed to widespread public contact, can be considered "advertising." We are not unaware of the conflicting jurisprudence on this issue.[2] However, our decision that the term "advertising" is unambiguous as used in the Erie policy is not shaken by disagreement among other courts about the meaning of "advertising" in those con-

texts. *See Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 152 (7th Cir.1994). Our holding today does not turn on whether the allegedly defamatory statements made by Alliance were made to the public at large, but on whether the statements were made in the course of active solicitation of business. Actions taken "in the course of advertising" must involve actual, affirmative self-promotion of the actor's goods or services. Sear's characterization of the issue fails because it ignores this aspect of advertising. Because Alliance was not actively soliciting business from LSC when it made the allegedly defamatory statements, but was instead merely fulfilling its job requirements for LSC, Alliance's conduct does not constitute "advertising" under the Erie policy.

Sear argues that Alliance was engaged in self-promotion because Alliance's report to LSC on Sear's competence was motivated by a desire to obtain more business from LSC to the exclusion of Sear.[3] Pet. Br. at 22. In support of this characterization, Sear directs us to Black's Law Dictionary, which defines the term "advertise" in relevant part as "[a]ny oral, written, or graphic statement made by the seller in any manner *in connection with the solicitation of business....*" Black's Law Dictionary 54 (6th ed.1990) (emphasis added). Sear urges that this broad definition encompasses Alliance's statements. However, Sear's jaunt through the dictionary ended too soon—the definition of "solicitation" defeats Sear's argument. To "solicit" is "to ask for the purpose of receiving; to entreat, implore, or importune; to make

---

**2.** Compare *Playboy Enterprises Inc. v. St. Paul Fire & Marine Ins. Co.*, 769 F.2d 425, 429 (7th Cir.1985) (interpreting Illinois law) ("the term 'advertising' does refer to the widespread distribution of promotional material to the public at large") and *Monumental Life Ins. Co. v. United States Fidelity & Guar. Co.*, 94 Md.App. 505, 617 A.2d 1163, 1173 (1993) (one-on-one solicitation by plaintiff's agents, which induced customers to switch coverage to the plaintiff, was not advertising), with *John Deere Ins. Co. v. Shamrock Indus., Inc.*, 696 F.Supp. 434, 440 (D.Minn.1988) (advertising encompasses any form of solicitation, including the solicitation of one person). *See also Select Design, Ltd. v. Union Mut. Fire Ins. Co.*, 674 A.2d 798 (Vt.1996) (collecting cases). The clear majority of the cases addressing the issue, however, have found the term "advertising" to

unambiguously refer to widespread distribution of promotional material to the public.

**3.** Curiously, the briefs are silent and the record unclear on the issue of the respective market positions held by Alliance and Sear. Sear argues that Alliance gave Sear a poor evaluation for its asbestos removal project specifically to increase its business to the exclusion of Sear. Pet. Br. at 22. This argument assumes a directly competitive relationship between Alliance and Sear in the asbestos removal market, yet we are given no basis in the record to substantiate that relationship. However, because the suggestion is not contested by Alliance, we accept as true the inference that should have been made explicit.

petition to; to plead for." Black's Law Dictionary 1392; Webster's II New Riverside University Dictionary (1994) (same). No evidence suggests that Alliance was soliciting business from LSC when it made the statements at issue. Indeed, the record indicates that Alliance, instead of *asking* for business, was *providing* business services, here professional consulting, when the allegedly defamatory statements were made. Sear confuses actions taken with a motive to increase business with affirmative requests or solicitation of business.

Furthermore, Sear's expansive interpretation of the term "advertising" is contrary to the term's plain meaning. Because the unambiguous term "advertising" as used in the phrase "in the course of advertising" is not separately defined in the policy, we must give the term its plain, ordinary meaning. *Hammond v. Fidelity & Guar. Life Ins. Co.*, 965 F.2d 428 (7th Cir.1992). We do not decide the issue, then, based on what forms of activity could, at the outside edge, be considered advertising. The fact that the term "advertising" may be stretched to encompass fringe activity is irrelevant if that result is contrary to plain meaning.[4]

 Alliance naturally would perform its job with a goal of obtaining future business from its satisfied clients. A wise business will take many steps to insure the satisfaction of its clients—from employing capable and organized employees to performing its duties with superior skill. These activities will undoubtedly increase a client's confidence and influence that client's decision to continue in or renew a business relationship. However the learned district judge noted, and we agree, that although these activities could qualify as some form of marketing, they escape the ambit of the plain and ordinary meaning of the term "advertising." Even negative statements made against com-

petitors will not qualify as "advertising" under this policy absent evidence that they were made in the context of directly soliciting business.

Here, Alliance was specifically hired by LSC to pass judgment on Sear's competence in the asbestos removal project at Lafayette–Franklin High School. Alliance had nothing good to report. Alliance reported its negative findings not in the course of affirmative self-promotion and solicitation of business, but rather in the course of fulfilling its consultation job requirements. We refuse to hold that every activity which produces the positive externality of increasing business, especially those activities requisite to basic job performance, constitutes "advertising" as intended in the Erie policy.

Because Alliance's statements did not constitute advertising injury committed in the course of advertising Alliance's services, the district court is AFFIRMED.

---

4. Earlier we rejected Sear's argument that divergent court opinions on the scope of advertising (one-on-one v. mass contact) compelled a finding that "advertising" is ambiguous in all contexts. In addition to being irrelevant, the argument is weak, because the clear majority of jurisdictions addressing the issue has found advertising to unambiguously refer to promotional materials disseminated to the public at large. We do not rely on this rule of law to make our decision today. However, we note that the available case support for this rule of law, which existed at the time of the Erie policy's inception in 1992, provided a foundation for an objective understanding of how the term had been operating in other "advertising injury" provisions, and thus how a court might find it would operate in the Erie policy. Sear's selfserving, subjective spin on the term does not govern.